STATE OF MAINE
*vs.*
ALTON L. MITCHELL

Hancock.    Opinion, February 11, 1955.

*W. Atherton Fuller, Jr.*, for State.

*Blaisdell & Blaisdell*, for respondent.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, TIRRELL, BELIVEAU, TAPLEY, JJ.

WILLIAMSON, J.   On report upon an agreed statement. The respondent, a lobster fisherman, found a lost lobster trap adrift bearing the name and license number of H. W. Sawyer, its owner. Instead of returning the trap to Mr. Sawyer, who was known to the respondent, and as he first intended, he set and placed it among his own traps attached

to a buoy marked with his name and license number. While he was under observation of a warden he raised the trap, and was thereupon charged with violation of the statute, reading in part, as follows:

> "No person, except the owner or an officer authorized to enforce the sea and shore fisheries laws, shall raise, lift or in any manner molest any pot, trap, car or other contrivance that is set for the taking or holding of lobsters or crabs without the written permission of the owner thereof."
>
> R. S. c. 34, § 121 (1944), enacted P. L. 1947, c. 332, § 121; now R. S. c. 38, § 117 (1954).

It is agreed that the respondent was neither the owner of the trap nor an authorized officer, and that he did not have written permission of the owner.

On first reading it would seem that the respondent admittedly was not within a class eligible to raise the trap. The word "owner," however, in the agreed statement plainly was intended by the State and the respondent to mean the person with good title to the trap or the rightful owner, and was used without reference to the statute.

The case turns upon the meaning of the word "owner" in the statute. Obviously if "owner" includes only the rightful owner, then the respondent must be found guilty. In our view, however, "owner" has a broader application; and the respondent was the owner of the trap within the meaning of the statute.

The respondent was the finder of the lost trap with possession and control good against the world, except the rightful owner. *Lawrence* v. *Buck,* 62 Me. 275 (1874); *James* v. *Wood,* 82 Me. 173, 19 A. 160 (1889); *Weeks* v. *Hackett,* 104 Me. 264, 71 A. 858, 129 Am. St. Rep. 390, 19 L. N. S. 1201 (1908); *Armory* v. *Delamirie,* 93 Eng. Rep. 664, 1 Strange 505 (1722); 52 Harv. L. Rev. 1105; 36 C. J. S. 772, Finding Lost Goods, § 5(a); 34 Am. Jur. 637, Lost Property, § 8.

In raising the trap the respondent in no way raised, lifted, or molested a trap in the possession or control of the rightful owner. He was doing no more than raising a trap which from the time it was found adrift had been at all times in his possession and control.

We need not determine what, if any, liabilities the respondent may be under apart from the statute in question. He may have become liable to Mr. Sawyer for conversion of the trap, or for damages from its use, for example. On the criminal side he may have violated the law by taking the trap for his own purposes. These are problems not peculiar to this particular type of property and are not controlled by the statutes regulating the lobster fishing industry.

In reaching our conclusion we have in mind that "owner" does not necessarily have the same meaning under differing circumstances. The Massachusetts Court has said: "The word 'owner' is not a technical term. It is not confined to the person who has the absolute right in a chattel, but also applies to the person who has the possession and control of it." *Keith* v. *Maguire*, 170 Mass. 210, 48 N. E. 1090 (1898). See also 73 C. J. S., Property §§ 13, 13 (c); 50 C. J., Property §§ 48, 50. We are not, therefore, compelled to treat the rightful owner alone as the statutory owner. We may look further to find the meaning of the statute.

The purpose of the statute seems clear; namely, to punish severely interference with traps set for lobster fishing. The penalties are fine or imprisonment or both; and ineligibility to hold a lobster fishing license for three years.

In our view the statute is not aimed at punishing, for example, the larceny of A's trap from A's yard. There is ample law governing such a case. It bears no relation to the raising of traps set for fishing.

Under the statute the Legislature protects by penalties the possession and control of the person who has set traps for lobster fishing. The precise ownership of the trap below the surface of the sea is not the important factor. In other words, the gist of the offense lies in the interference by B with traps set by A.

The parties here are the State and the finder. This is not the case of the rightful owner against the finder, or the first finder against the second finder, in which the plaintiff prevails.

On the theory of the State carried to its logical conclusion, a conditional vendee or mortgagor would not be an owner under the statute. If A purchased a trap in good faith from C which C had stolen from B, A would be violating the statute in raising the trap when set by him.

Suppose X, at the respondent's written request, had raised this particular trap. Would X without any knowledge whatsoever that the trap attached to the respondent's buoy was owned by Mr. Sawyer, have been liable under the statute for raising it? We think not.

In no way does the fact that the finder is an "owner" under the statute alter the situation to the disadvantage of the rightful owner. At all times his rights are greater than the rights of the finder.

It will serve no useful purpose to compare the meanings of "owner" in the lobster fishing statute with "owner" under the lien, motor vehicle, and other statutes. The problems of the lobster industry are of a nature peculiar to itself and the statutes are designed and enacted with reference thereto.

The respondent was then the owner of the trap within the meaning of the statute. He was accordingly eligible to raise the trap, and committed no offense in so doing. In accordance with the terms of the report, the entry will be

*Respondent adjudged not guilty and discharged.*